IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL WITTENBERG and )
DEBBIE WITTENBERG, on behalf )
of their son, J.W., as well )
as on their own behalf, )
)
    Plaintiffs, )
)
    v. )    1:05CV00818
)
WINSTON-SALEM/FORSYTH COUNTY )
BOARD OF EDUCATION, a/k/a )
Winston-Salem/Forsyth County )
Schools, )
)
    Defendant. )

MEMORANDUM OPINION AND ORDER

OSTEEN, District Judge

Plaintiffs Michael and Debbie Wittenberg maintain this action on their own behalf and on behalf of their son, J.W., against Defendant Winston-Salem/Forsyth County Board of Education. They have alleged that Defendant has failed to comply with the requirements of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. This matter is before the court on Plaintiffs' motion for a "stay put" order.

I. BACKGROUND

The facts of this matter have been set out in the court's Memorandum Opinion and Order of July 11, 2006. The following facts are relevant to this motion. Plaintiffs live in Forsyth County, North Carolina, the educational system of which is

administered by Winston-Salem/Forsyth County Schools ("FCS") and Defendant.  In March 2003, Plaintiffs contacted FCS to arrange for specialized educational services for their child, J.W., who is autistic.  While engaged in this process with FCS, Plaintiffs initiated for J.W. an Applied Behavioral Analysis ("ABA") program through an independent provider; this programming took place in Plaintiffs' home.

After evaluating J.W., FCS created an Individual Education Program ("IEP") that did not provide for FCS-funded home-based programming like that which J.W. was already receiving.  Plaintiffs disagreed with the evaluation and challenged the IEP by filing a request for a due process hearing with the North Carolina Office of Administrative Hearings.  After a hearing, the Administrative Law Judge ("ALJ") ruled in favor of Plaintiffs, concluding that the IEP violated the IDEA and that FCS was required to reimburse Plaintiffs for the cost of providing the home-based programming.  The ALJ's opinion, in addition to explaining his rationale, specified that "this decision establishes JW's stay put placement as his ABA program provided by ABC of North Carolina, Inc."

Defendant appealed the decision within the North Carolina Office of Administrative Hearings to a State Review Officer.  The State Review Officer overruled the ALJ's decision and concluded that the IEP was valid.  Throughout these proceedings, J.W. has continued to receive his education through home-based

programming, but Defendant has not provided any money to Plaintiffs to pay for J.W.'s education.

**II. ANALYSIS**

Plaintiffs have filed a motion for the court to enter a "stay put" order requiring Defendants to pay for J.W.'s education in accordance with the "pendant placement" provision of the IDEA, 20 U.S.C. § 1415(j). That section provides that

> during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).[1] The provision applies when parents invoke the procedures established in § 1415 to challenge a decision by a school district changing a child's educational placement. As a general rule, the "then-current educational placement of the child" will be the educational placement occupied by the child immediately before the change being challenged. Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996); Board of Educ. of Montgomery County v. Brett Y., 959 F. Supp. 705, 709 (D. Md. 1997). Of relevance here, however, the provision fixes the current placement "unless the State or local educational agency and the parents otherwise agree." § 1415(j). An agreement between a state agency and the parents to change a child's

---

[1] The language now found in § 1415(j) was at one time located in § 1415(e)(3). Some of the cases cited in this analysis refer to the earlier version of the statute, but their interpretation remains valid.

3

placement within the meaning of the statute may be formed by a ruling in favor of the parents in an administrative proceeding. See School Comm. of Burlington v. Department of Educ. of Mass., 471 U.S. 359, 372, 105 S. Ct. 1996, 2004 (1985) (stating that a state administrative appeal decision "would seem to constitute agreement by the State to the change of placement"); Susquenita, 96 F.3d at 83 ("[A] ruling by the education appeals panel in favor of the parents' position constitutes agreement for purposes of section 1415(e)(3)."); Clovis Unified Sch. Dist. v. California Office of Admin. Hearings, 903 F.2d 635, 641 (9th Cir. 1990) (citing Burlington for this proposition); Brett Y., 959 F. Supp. at 713 (following Susquenita and Clovis). This principle has also been established by regulation in 34 C.F.R. § 300.514(c).[2] Once an agreement has been reached in this way, the new placement becomes the current placement for the purposes of the pendent placement provision. Susquenita, 96 F.3d at 84; Clovis, 903 F.2d at 641; Brett Y., 959 F. Supp. at 713.

---

[2] The regulation states:

> If the decision of a hearing officer in a due process hearing conducted by the [state educational agency] or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State or local agency and the parents . . . .

34 C.F.R. § 300.514(c). This regulation was issued to codify the relevant portions of the holdings in Burlington, Susquenita, and Clovis. 64 Fed. Reg. 12,615 (Mar. 12, 1999).

Here, Plaintiffs argue that the ALJ's decision in their favor constituted an agreement with the state educational agency that J.W.'s current educational placement is his ABA program.[3] They argue that because the ALJ's decision was a state-level decision, it satisfies the terms of § 300.514(b) and that, if the court concludes that the decision was a local-level decision, it still qualifies as an agreement under Burlington. They have asked the court to issue a stay put order requiring Defendant to pay for J.W.'s education while this matter proceeds. In opposition to the motion, Defendant makes two arguments. It first argues that J.W.'s education is governed by 34 C.F.R. § 300.514(b), which exempts Defendant from the pendent placement provision. It next argues that the ALJ's decision cannot be an agreement by the state educational agency because it was overturned by the State Review Officer.

The court will first address whether Defendant is exempt from the pendent placement provision. Section 300.514(b), which echoes the second part of § 1415(j), states that "[i]f the complaint involves an application for initial admission to public school, the child, with the consent of the parents, must be placed in the public school until the completion of all the

---

[3] Plaintiffs have also suggested that the ABA program should be considered the "then-current educational placement" because it was the educational placement of J.W. before the challenge began. The court notes that, although Defendant has acknowledged that J.W. has been in an ABA program, it has never agreed that the ABA program is the most appropriate placement for J.W. or agreed to pay for J.W.'s education there. The court concludes that, without an agreement to that effect, the ABA program cannot be the "then-current educational placement."

5

proceedings." Defendant suggests that because J.W. has not yet attended public school, the dispute here involves an application for initial admission, placing it outside the usual stay put procedures.

The court does not agree with Defendant's argument. The provision only speaks to a situation in which the parents consent to a child's placement in public school. It makes no mention of a situation in which, as here, the parents do not consent to such a placement. There is nothing in the regulation that indicates that a child whose parents do not consent to public school placement are not entitled to seek a stay put order if they would otherwise be entitled to one. A more natural reading of the regulation (and the statute) is that a defendant may not avoid a stay put order just because a child has not yet attended school; for a child who has not yet attended school, the default placement is in school rather than out of school. In this case, the parents did not consent to having J.W. placed in public school. Instead, they unilaterally placed J.W. in a private education program. The court concludes that § 300.514(b) does not prevent them from seeking funding for J.W.'s education through a stay put order if they can show that the state educational agency has agreed that J.W. should be placed in the ABA program.

Regarding Defendant's second argument, this case presents the difficult question of how courts should treat an ALJ decision that has been overturned on appeal by a State Review Officer.

6

The IDEA specifically provides for two approaches to administrative challenges. A parent is entitled to "an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A). If the state elects to allow the local educational agency to conduct the due process hearing, it must provide for an appeal to the state educational agency. Id. § 1415(g)(1). If the due process hearing is held by the state, no appeal is required. The former system is often referred to as a two-tiered system, while the latter is known as a one-tiered system.

The cases referenced above, Burlington, Susquenita, and Clovis, which established that an administrative ruling constituted an agreement between the state and the parents, dealt with one-tiered systems. Several courts have interpreted those rulings in the context of two-tiered systems, with conflicting outcomes. Compare L.B. ex rel. Benjamin v. Greater Clark County Sch., No. 4:05CV206, 2006 WL 1750295, at *6-*7 (S.D. Ind. June 20, 2006) (holding that a favorable first-tier ruling established an agreement), and T.H. v. Board of Educ. of Palatine Cmty. Consol. Sch. Dist. 15, 55 F. Supp. 2d 830, 845 (N.D. Ill. 1999) (same), with Larson v. International Falls Pub. Sch., No. Civ. 02-3611, 2002 WL 31108199, at *4–*5 (D. Minn. Sept. 18, 2002) (holding that a first-tier ruling did not establish an agreement), and Murphy v. Arlington Cent. Sch. Dist. Bd. of

7

Educ., 86 F. Supp. 2d 354, 365 (S.D.N.Y. 2000) (same).  These cases have largely relied on state laws implementing the IDEA and have not produced a generally applicable guiding principle.

In Murphy v. Arlington Central School District Board of Education, 86 F. Supp. 2d 354 (S.D.N.Y. 2000), the court examined § 300.514(c) and concluded that a decision by a first-tier decision maker was not an agreement within the meaning of the regulation.  The court reasoned that § 300.514(c) refers only to administrative decisions rendered by state-level officers and makes no reference to decisions by local officers.  Id. at 364.  The court examined the New York administrative scheme and determined that the first-tier decision maker was a local officer.  Id.  Thus, the court concluded that a decision by a first-tier decision maker did not satisfy the requirements of the regulation.  Id. at 364–65.  The court further reasoned that the IDEA only provides explicitly for two-tiered systems in which the first hearing is conducted at the local level, despite the fact that some states conduct first-tier hearings at the state level.  Id. at 365.  Referring to the latter, the court stated that "it is arguable that § 300.514(c) was limited in its application, not only to state administrative decisions, as opposed to a local decisions [sic], but also to the final administrative decision available under that state's procedure."  Id.  The court concluded that because the first-tier decision at issue was neither a state-level decision nor final, it was not an agreement for the purpose of the regulation.  Id.

8

The opposite result was reached in L.B. ex rel. Benjamin v. Greater Clark County Schools, No. 4:05CV206, 2006 WL 1750295 (S.D. Ind. June 20, 2006). In that case, the court also considered § 300.514(c), but, unlike Montgomery, found nothing in the language of the regulation to indicate that its application depended on whether the system in question was one-tiered or two-tiered. The court stated, in reference to the decisions made by a hearing officer and a state review officer in a two-tier system, that "[e]ither type of decision qualifies under this language and there is no indication that an unfavorable second-tier decision vitiates the effect of a favorable first-tier decision." Id. at *8. The court ruled that a first-tier ruling in favor of the parents did constitute an agreement for the purposes of the statute, even though it had been reversed by the review officer. Id. The court supported its ruling with two additional lines of reasoning. First, it held that Burlington, and the related cases, on which the regulation was based, were more expansive than the regulation; the court read Burlington to indicate that an agreement could be formed by a favorable ruling by a local agency, despite lack of reference to local agencies in the regulation. Id. at *8-*9. Second, the court held that an Indiana statute also provided that a first-tier hearing officer's decision was an agreement, and that nothing in federal law prevented Indiana law from so providing. Id. at *9.

A third approach was adopted by the court in Larson v. International Falls Public Schools, No. Civ. 02-3611, 2002 WL

31108199, at *4-*5 (D. Minn. Sept. 18, 2002). In that case, the court did not examine either § 300.514(c) or Burlington but relied on the language of the relevant Minnesota statute for its holding. The court determined that, under Minnesota law, a first-tier hearing officer's decision was not "binding" while a state review officer's decision was "binding." Id. at *5. The court stated "it strains the bounds of reason to consider a non-binding decision by an independent hearing officer as an agreement between anybody, particularly an agreement which profoundly affects the statutory rights of the parties." Id.

In this case, Defendant, following the approach in Larson, first advances an argument based on the North Carolina statute implementing the IDEA. That statute provides that "the decision of the administrative law judge becomes final and not subject to further review unless appealed to the Review Officer." N.C. Gen. Stat. § 115C-116(h) (emphasis added). Furthermore, "the State Board shall have the power to enforce the final decision of the administrative law judge, if not appealed" to a Review Officer. Id. § 115C-116(j) (emphasis added). From these provisions, Defendant argues that an appealed decision by an ALJ is unenforceable and cannot serve as the basis of an agreement setting out a current educational placement.

The problem with Defendant's argument is that it applies with equal strength to a State Review Officer's decision. According to North Carolina General Statute § 115C-116(i), the decision of a State Review Officer "becomes final unless an

10

aggrieved party brings a civil action." Cf. 34 C.F.R. § 300.510(d) ("The decision made by the reviewing official is final unless a party brings a civil action under § 300.512."). The statute only empowers the State Board to enforce "the final decision of the Review Officer." N.C. Gen. Stat. § 115C-116(j) (emphasis added). Thus, a State Review Officer's decision is also neither final nor enforceable when it has been challenged in court. Nonetheless, as discussed above, according to both regulation and case law, a state review official's order may serve as an agreement to change a child's placement. Thus, the court concludes that, unlike the Minnesota statute considered in Larson, the North Carolina statutes do not explicitly indicate that an ALJ's decision is unsuitable as an "agreement" for the purposes of § 1415(j).

Despite this conclusion, the court agrees with Defendant that no agreement was reached between the state or local educational agency and the Wittenbergs. North Carolina has adopted a modified two-tier system, in which both levels are conducted by the state.[4] The due process hearing is carried out

---

[4] This is also the case in several other states. See L.B. ex rel. Benjamin v. Greater Clark County Sch., No. 4:05CV206, 2006 WL 1750295, at *7 (S.D. Ind. June 20, 2006) ("The balance of all factors in Indiana's system weighs in favor of a finding that the state conducts both tiers of the IDEA administrative review process, including the first-tier due-process hearings."); T.H. v. Board of Educ. of Palatine Cmty. Consol. Sch. Dist. 15, 55 F. Supp. 2d 830, 845 (N.D. Ill. 1999) ("[T]he text of the Illinois statute which governed IDEA proceedings at the time of [the child's] IEP reveals that both the Level I and Level II hearings are 'state level' hearings."); see also Larson v. International Falls Pub. Sch., No. Civ. 02-3611, 2002 WL 31108199, at *5 (D.
(continued...)

11

according to the North Carolina Administrative Procedure Act, Article 3 of Chapter 150B of the North Carolina General Statutes. N.C. Gen. Stat. § 115C-116(d).  Chapter 150B-32(a) specifies that an administrative law judge will be selected by the North Carolina Office of Administrative Hearings.  The local educational agency is not involved in selecting the judge or otherwise conducting the hearing, except to the extent of being a defendant in the proceeding.

Because the hearing and the appeal are conducted by the same entity, when a State Review Officer overrules an ALJ, the court is confronted with opposing opinions issued by the same entity. Clearly, under normal operating conditions different components of a state agency may disagree, but when one component indicates that the agency has reached an agreement with the parents and another component indicates that the agency has not, both cannot be correct.  In such a situation, the court must accept the statement issued by the individual with the authority to issue the agency's definitive opinion.  In this context, that individual is clearly the State Review Officer, not the ALJ.

For this reason, the court agrees with the approach taken in Montgomery and disagrees with the approach taken in Benjamin. The regulation, § 300.514(c), should be read to mandate an agreement after a "decision of a hearing officer in a due process

---

[4](...continued)
Minn. Sept. 18, 2002) ("[T]he Court notes that the notion that the [Minnesota] IHO level of review is local is a legal fiction.").

hearing conducted by the SEA" only if there is no further appeal to a state review official.  The statute on which the regulation is based does not contemplate a situation in which a hearing conducted by the state will be appealed to a state review official.  In systems such as North Carolina's, in which the hearing is conducted by the state and appealed to the state review official, the state review official's decision should be considered the official position of the state educational agency.[5]

Here, because the state educational agency is a single entity, it can have only one position regarding whether it intended to agree with Plaintiffs about J.W.'s status.  The court will look to the State Review Officer's opinion rather than that of the ALJ for the state educational agency's position.  For this reason, the court concludes that there has not been an agreement reached between the state educational agency and Plaintiffs.  As a result, Plaintiffs are not entitled to a stay put order instructing Defendant to pay for J.W.'s ABA program.

**III. CONCLUSION**

For the foregoing reasons,

IT IS ORDERED that Plaintiffs' Motion for "Stay Put" Order [25] is DENIED.

---

[5] Because the court concludes that the first-tier hearing in North Carolina is conducted by the state, it reserves judgment on the question of whether a favorable ruling in a hearing conducted by a local educational agency would be an agreement for the purposes of the statute.

This the 1st day of September 2006.

_____
United States District Judge